United States v. David Polos and Glenn Glover. May I proceed? Yes, please proceed. May it please the Court. Kadar Bhatia, on behalf of the appellant David Polos, I reserve two minutes of time. David Polos was a long-time decorated DEA agent whose career and reputation were destroyed by this prosecution, but because the government's case hangs on two questions that were fundamentally ambiguous, the counts of conviction must be reversed. A question is fundamentally ambiguous as a matter of law if it has no single meaning with which people of ordinary intellect would agree. Are you talking about work? Is that the word that's ambiguous to you? Your Honor, we believe the term employment activities, combined with examples that were contradictory and themselves vague, created a fundamentally ambiguous question, so it's not limited to the word work, but it's the question and the confusing, ambiguous examples. May it continue. The section itself, 13a, that is, which is quoted on page 10 of our opening brief, begins with a vague instruction itself, list all employment activities. But critically, people of ordinary intellect could arrive at different definitions of that very term. It could be a person's trade or profession. It could be an occupation. What says all doesn't say some. It does say all, Your Honor. So that means all? If you're doing several different things, include all of them. How is that vague or ambiguous? All? Your Honor, it's the examples that make the all ambiguous. And I think what's instructive here is the... Ambiguous. It's employment activities, and listing all of them, Your Honor. But I think the Supreme Court's recent decision... All of them. Your Honor, I believe the Supreme Court's recent decision in Johnson v. United States is instructive here, where the Supreme Court held that the residual clause of the Armed Career Criminal Act was void for vagueness. Well, sure, that was because of a risk of violence, and it was hard to discern with regard to certain crimes, but employment doesn't seem to me to be vague or ambiguous. And when it says all, if you have a part-time employment, all means all. All. Your Honor... List all your income. You have income from a law firm. You also have income from investments. You have income from various sources. All. Not just some. All. I think if a question asks... How hard is that? If a question asks an applicant to list all of your income, for example, and then make sure your example is included your favorite baseball team, I think the question might become fundamentally ambiguous, because there are examples that contradict the very question. I took it that part of your argument rested on the comparison between Section 13a and Section 20. Is that right? That's right, Your Honor. All right. Why don't you talk about that? Section 20 asks a much more direct question, which is to list foreign financial interests, among other things. And I think that really gets to the heart, perhaps, of what the government was trying to ask. We don't know the answer to that, of course. But if the government wanted to know about investments, Section 20 is a good example of how they could ask that precise question and have an answer that might be susceptible to a 1001 charge. But critically, nowhere on the form, even in Section 20, does it ask about a loan, which is, of course, what the appellant David Polis had to S.A. and G. Corp. So nowhere on the form does it ask for a loan, but Section 20 certainly gets closer to asking about investments. Well, this is a little different, right? Because what's odd about this issue is that the fundamental ambiguity issue we've regarded as a legal issue. But, of course, there's an interplay between that issue and the sufficiency issue. And we see that Mr. Polis or Agent Polis describes what he's doing at this club as a form of work, right? That's right, Your Honor. There was testimony that they referred to it as work. So at a certain point, I mean, there was some evidence that he viewed it as work. And wouldn't that come under self-employment? What does self-employment mean? Your Honor, again, I think self-employment could involve owning a business, for example. But it wouldn't include where you are a formal lender to a business and go to the business. That's not what he was doing. He's not just a formal lender. So maybe if I'm a passive investor, I own 30 percent of the stock of a small company and do nothing else, then I'm not working there. But that is not, in fact, what he was doing. So don't we have to see the question in that light? Your Honor, I think it's still ambiguous because of the contradictory examples. The question itself asked the applicant to list employment activities. And one of those examples was self-employment, which I think some people would say contradicts the idea of sort of this side job that the government says. That's what self-employment means. So if I can't do this, but if you are employed by a law firm, but you also work on the side doing something else, but it's your own small business, you do consulting on the side, is that self-employment? I think that is self-employment, Your Honor. What's ambiguous about that question? Again, the question asks for employment activities and lists as an example self-employment, which employment activities, according to some definitions, some reasonable people might say it's your trade, your profession. So helping a friend at a bar on the side, even though you're an all-day, all-night DEA agent, could still not fall under the definition of fundamental ambiguity. But that's where we have to guess. Deciding who to hire and who to fire or setting hours and other things like that, I mean, that kind of goes beyond just helping. And as you say, he himself perceived it as work, and he had an interest in the club. So, I mean, the fact that he's an investor, I get, but he's not a passive investor. Judge Loyer just questioned you about that. So he's doing more than that. The ambiguity is probably more about the situation he's created for himself. He's invested, and now he's become very active, very active. He's helping run the business. He's kind of stepped over from the fellow who's from the bank, and now he's participating in the running of the club. Because why? Because he has an interest, right? He has an investment. He's protecting his interest. He's working at his investment, isn't he? Your Honor, I see that my time has elapsed, but if I can answer. . . Well, ask the. . . The Senate chair is the one that does that. If I can answer briefly. Answer Judge Wesley. This goes a little bit to something that Judge Loyer mentioned, too, but the question of fundamental ambiguity has to be resolved on whether the question itself makes it clear what the questioner is asking and what the answerer is asking. So although an example like in Johnson, arson is relatively clear, or burglary or extortion are relatively clear, but combined as a whole, this section is void for vagueness because although the individual examples might be clear, when you put them together, when you add the residual clause in that case, when you have the blanket instruction to list all employment activities, in this case, you get to the ambiguity because of the contradictory examples. Thank you, Counsel. Thank you. We have the other defendant. Good morning, Your Honor. Harold Ruval for the Appellant Clover. I'm going to try, and I will not go over some of the territory of the court just covered with Mr. Kandor. However, I do want to make two points out of it. Number one, opposite ends of the bench addressed the same question in two different ways. Your Honor addressed the question of income, and Your Honor addressed the question of self-employment. If you read Light and Lattimore as the legal framework in which the question must be judged, we know that terms as simple as the term you can be ambiguous. Here, if you read the question that was posed in this section, and you read it in its entirety, it's the kind of question that no judge in any court would ever sustain as not being confusing, misleading, inadequate, and improperly focused. If the question, Your Honor, was what was the source of all of your income, then it would be clear and unambiguous. That's not the question. If the question was do you have any gainful employment, self-employment that generates income to you by 1099 or W-2, that would not be ambiguous. But that's not the question. I'm sorry? The test is not ambiguity. So you can have an ambiguous question. The test is whether it's fundamentally. The real test is whether it's fundamentally ambiguous and understood by the person responding that he, in fact, was answering falsely. The question was answered here truthfully. No one doubts that. The question the government raises and makes criminal here is that there are other things that, if you stretch the definition, might be included one way or the other, and his failure to include them becomes the false statement. It's not that he said, No, I didn't work at a bar. He didn't say, I had these three employments, two of which were untrue. You have to, if you read Lattimore, it clearly says as does Light, you have to look at the individual responding to the question. The easiest way to do that here is compare the answers given by Mr. Glover to the testimony of Barbara Roach. I think it's at A336 is where it starts. Barbara Roach, with a college degree, went with a high school graduation, answers the questions posed by trial counsel, Ms. Fleming, with regards to whether she would consider running an eBay business out of your house as being responsive, to which she responds, Not yes, not no, but probably. It depends upon the circumstances. That entire line of cross-examination shows that someone who is trained, educated, and who is the self-described adjudicator of anomalies, at page 334 of the transcript, is not really clear as to whether some of the circumstances of self-employment which the court posed, in fact, are covered by the question. The question goes on after asking about, quote, employment activities, not employment, employment activities. What does that mean? If my normal activity as a lawyer practicing a law firm is to write briefs or arguments or letters or documents, if I decide to write an insert on Facebook, am I performing a, quote, employment activity, writing? If I have a business such as eBay and I sell one, two, three, at what point is the line drawn that I become, quote, self-employed? And if I make no money at it, no money at it, am I, quote, self-employed? Can I turn your attention briefly to the conspiracy charge? Yes. Can you tell me you argue that there was a failure of sufficiency on the conspiracy? Could you make that argument here? Yes, very simply, Your Honor. There is absolutely no evidence of any agreement between the two of them with regards to falsely making any statement at any time. So you think it's not sufficient that they work together, sell each other all the time, and that I guess it was Glover who used Poulos for a reference? Glover used Poulos for a reference long before he had the bar. Right, he did it before he. . . That's correct. And he listed other people as well. That's correct. The government chose to interview, correct? I mean, he had other references as well. That's correct. And he did not select the reference that the government chose to query. Is that the sum and substance of the conspiracy charge? I think that's the sum and substance of the government's evidence on conspiracy. So beyond a reasonable doubt, does it. . . I cannot imagine how a reasonable jury confronted with the fact that people know each other and people use each other as references and no one knows whether or not that reference is going to be queried and they've used each other as references for years. Somehow there was some connection out or about. . . They answered the same question the same way and they spent countless hours at a bar together and exchanged hundreds of e-mails with each other on a regular basis. So regular contact, mutual interest in not reporting it, all appropriate inferences to be drawn, aren't they? No. If the government had produced e-mails or messages indicating anything about the SF-86. . . In a conspiracy, no one ever says, let's conspire to kill Jones. I mean, it's almost always circumstantial. And Glover doesn't list his wife's business and then when he's told to list it, he lists that, but he doesn't list this. Seems curious, doesn't it? Well, Your Honor, when he's queried about it, he not only identifies the puppy spa, his wife's business, but in the notation there's also an indication that he has another investment. There was a question about income from his tax return. No one ever queries as to, well, what's that investment, where is it? Well, the fact that they didn't ask it doesn't mean that he didn't lie on the form. If the form was unambiguous, the fact that someone else didn't take the time to ask the question doesn't un-crime it, does it? Yeah, if he discloses there's another investment and this is the other investment, it certainly does. Well, it shows that he thinks it's an investment, but it doesn't show that he wasn't willfully withholding information about the fact that he was working there. If he considers it an investment and he responds and identifies that there is. . . Then either or, he can be an investor and or work someplace. In this. . . No, the fact that he lists it as an investment doesn't absolve him of listing it as an investment doesn't absolve him from answering truthfully the question about work. That's correct, but the question was not asked about investment. May I ask you a question just as a follow-up on, just to go back to Section 13, because I'm trying to understand your argument. Let's suppose that your client was not an analyst or an agent or employed by the DEA and worked or had an interest in this club and did everything that the evidence showed he did. And received no income? And received no income. And he was asked by a friend, what do you do? What's your job or are you self-employed? Your view is that that would be ambiguous, fundamentally. No, truthful answer to that question would be no. Because if you look at the testimony in this case, and I believe it was, and it's in the government brief, that what he did at the place, the place had full-time employees, had managers on all the shifts, and they would answer or he would answer questions that could not be answered by a manager. Another way of saying had to be answered by an owner. All right. Let's suppose that you had a financial stake in the business, and so you got something out of it and you were there off and on giving advice, consulting and so on, and your neighbor says, are you employed, are you self-employed? Do you still think that that's an ambiguous question? And the truthful answer is no, I'm not self-employed, even though I get a financial stake and I help the business. I would look for the indicia of employment, which are not present here. I would look at did he get a W-2, did he earn any income at any time, was he covered by unemployment insurance? It's paid or unpaid, so I don't understand why that's. I understand that.  It says work, paid or unpaid. What is that ambiguity? Your Honor. They're considering that. I mean, your opponent's, your co-appellant's brief says, well, you don't know what work is. It could be raking leaves in the lawn because it says unpaid. Well, I know when I'm raking leaves in my lawn that that's work, but I don't think I'd list it on my SF-86. What would you do if you did it for your neighbor, Your Honor? Huh? If you did it for your neighbor. Your neighbor went away unpaid. If I did it for my neighbor regularly, I probably would list it. As work or employment, I respectfully submit the, with due respect, and I hate to use that phrase, when you say I probably would, maybe I would, maybe I wouldn't, that's insufficient to sustain a criminal charge. Fair enough. Thank you. Thank you very much. On behalf of the government, you've both reserved time for rebuttal. May it please the Court, my name is Paul Monteleone. I represent the government in this appeal and represented the government at trial below. As the district court recognized, this is not a close case. The defendants were convicted on overwhelming evidence that they made false statements on their SF-86 forms. That's the sufficiency issue. The issue before, I mean, one issue, the main issue, the first issue is the fundamental ambiguity issue. Yes. I think that that's part of the sufficiency challenge, obviously, because That's the tricky part for me, is how do you disconnect it because we seem to have, in light and in other cases, disaggregated those two analyses. Sure. So it's absolutely right that the question of fundamental ambiguity, as distinct from ordinary ambiguity or arguable ambiguity, is a question of law, reviewed de novo, and then the sufficiency of the evidence is analyzed in light of whether it meets that legal standard. So, yes, of course, if the court found that all these questions were fundamentally ambiguous, they weren't just ambiguous, they were fundamentally so, then the evidence would not be sufficient to prove a false statement, because there's no way of giving a false statement to such a question. But these questions are really worlds apart from the types of questions that the court has found to be fundamentally ambiguous. Can you tell me what self-employment means? Well, right, so we think that a paradigm case of self-employment, the clearest case of self-employment is running a business that one owns. Most of the people who would say that they're self-employed actually have some form of business. I'm a 30% owner of shares in a small company, and periodically I check in with the person who runs it, Mr. Wesley. Is that self-employment? What is that? Well, so I think I'll try to answer that, but let me just indicate it. I think that by moving to this specific case, we're talking about an edge case, and every word is going to have an edge case for a definition. Do you know what we're trying to assess in determining whether a question is fundamentally ambiguous? The test cases? Well, I think that when you're determining whether a question is fundamentally ambiguous, you're determining whether there's any non-edge cases, whether there are core cases, whether there's a core meaning. Obviously, any term is someone, you know, is something a door. That caveat, would you answer my question? Yes, Your Honor. So I think that a type of minority ownership share and some contact with the business that doesn't amount to work, full-time or part-time work, paid or unpaid, or that doesn't feel like a job or have the indicia of we talk about work, you do shifts, you are involved in personnel decisions, that would not qualify, but the jury was amply able to conclude that here, the defendant's conduct was absolutely within the definition of self-employment, was in the definition of full-time or part-time work, paid or unpaid. You're suggesting that we really can't disaggregate the sufficiency from the legal question. So I guess... The jury was able to make this determination. Sorry, my answer was based on the premise that this is not a fundamentally ambiguous question, that there might be ambiguity at the edge, but that there's a core meaning. And so it's not fundamentally ambiguous. Because you can come up with an edge case doesn't mean that a question is fundamentally ambiguous, that there's no intelligible core. Every fundamental ambiguity case that I'm aware of, the issue is, and usually the court actually will state it, could mean this, could mean that. There are two meanings. There's no way of choosing between those meanings. That's not this case, and that's not other cases that have sustained questions from fundamental ambiguity challenges, including questions that obviously have edge cases like, is there anything in your background that could embarrass the president? There are obviously edge cases about that, but there's a core. And so that wasn't fundamentally ambiguous. Is there anything in your... These other sort of much more general background check cases in the Carrick and Cisneros cases, those aren't fundamental ambiguities. So then you get to the point where any ambiguity is for the jury. Was this an edge case? Was the evidence sufficient to allow the jury to conclude that this was in the core meaning? But these questions, they're really very clear, they're very precise, and there's no issue of, well, it could be one thing, could be the other, we can't choose. I'd like to address the conspiracy issue. Thank you. So in assessing the evidence of the conspiracy, it's important to start with the defendant's motive. Both of them had identical motive to conspire as they had to make the false statements in the first place, because the... The motive is not an element of conspiracy. No, but it's a factor that the jury can look at in explaining the actions that they took. So the defendants took a number of actions in concert. At every time where they were called upon to disclose the club, they didn't. And at every time they were called upon to give an answer that might lead to the disclosure of the club, they gave an answer that didn't. Now, it's possible that on one view of that evidence, a jury might conclude that those are a number of coincidences, but it's also possible by looking to the circumstances, including the defendant's motive, that this is a concerted plan. But if the evidence could cut either way, you don't have sufficiency of the evidence to even go to the jury. Well, if the evidence viewed in the light most favorable to the government is equally consistent with a hypothesis of guilt and a hypothesis of innocence, then yes, that's insufficient evidence. But viewed in the light most favorable to the government, there's a very strong case of agreement here. What you have is, first of all, both of these defendants knew that if either of them gave the game away, they would themselves be at risk. And so their own work in making the false statements would be thwarted if the other one didn't make the false statements. Under those circumstances, you would expect them to actually form some mutual understanding that the other one wasn't going to give the game away. But there's more than that. What we have is that Glenn Glover lists Polos as a reference, and that act, of course, on its own, can be an innocent act. He had listed him before he even owned the club. Right, and in those circumstances, it was innocent. He listed other people as well. Right, but it's not the listing that is the conspiratorial act. The listing in these circumstances, the listing where the wrong question to Polos, the wrong answer from Polos, could give away Glover, that shows that there was a conspiratorial agreement because he was comfortable continuing to list Polos, even when he knew that if Polos answered the questions truthfully, Glover's own work in making these false statements, those crimes would be exposed. And so with that knowledge, he was still somehow comfortable listing Polos as his reference. And, in fact, that confidence was well-placed because Polos gave an answer that is most charitably described as misleading to the investigator, concealing— It's really about that, so the statements to the investigator concealing the fact that his friend has— Of course, Glover couldn't be sure that the government would interview Polos as opposed to any of his other references. That was purely the government's choice, correct? So if so, if this was a conspiracy, it was pretty fragile. I wouldn't put it that way, Your Honor. I think that, repeat, individuals like Polos and Glover who have been investigated multiple times are aware that, although investigators might not actually follow up on every single individual, that for a top-secret-level security clearance, there is a thorough background investigation and that they understand that anyone who they list— There's a high likelihood that they will. Yes, yes, and— He would have ensured that Polos wouldn't have been interviewed by not listing him. Right, but then he'd have to list someone else. That's what I'm saying. I'm saying if he wasn't sure that Polos wasn't going to give him up, he would never have listed Polos because, at least, that increased the possibility that Polos would be questioned and Polos would have to either lie, if the questions are not ambiguous, lie and or say that, indeed, he was involved in the bar, the very same bar that Polos himself was. That's exactly right, Your Honor. But that only shows that they have mutual interests. Well, I think that it shows that he had sufficient confidence in what Polos would do for him, that Polos would, to the face of a background investigator, give the answers that would conceal Glover's work. He had enough confidence to put that name out there, and the jury was very able to conclude— Was the SF-86 rollover, was it every three years? I believe it was every five years during that time period. But if he listed someone who knew nothing, that would have been even a better plan, don't you think? And it's possible that some of the other people who he listed were that. But, you know, when you go through the form, the whole forms were in evidence, and there's a number of people that you have to list, and you can't list anyone twice. And if you list someone and they don't give a satisfactory answer, the investigators are going to look for more people. So you actually have a semi-limited universe of people who have the right amount of knowledge about you. Of any of the other references who were listed, was there any evidence about them and their knowledge or lack of knowledge about the club? The only evidence that there was was Christopher Schulte, a defense witness, gave actually a similar answer with respect to Glenn Glover, but on cross-examination, he was very intensively challenged for a number of issues with his credibility. But it included that he had previously told the FBI that he used his judgment not to mention the club in that answer, that his wife was an employee of the club, he was a friend of Glover, and he also had serious issues with his honesty that involved him getting disbarred. But apart from that, the other individuals that Polos and Glover listed, we just don't know what they knew or didn't know. But what we do know is that Glover knew Polos knew, Polos did know, and when asked, Polos gave the answer that would mislead the investigator and conceal Glover's involvement. No evidence was there not that at least Mr. Glover, I think, asked someone not to tell state troopers about the club, about his interest in the club? That's exactly right. Not in the security clearance context, but showing Glover's desire to conceal, he sent a text message to Joseph Banas, another of the government witnesses and the manager of the club, saying that he's coming in with a state trooper and saying they don't know that I own the club. Very clearly, that heads up that he's bringing a guest along, that he's going to text in advance the manager to make sure that the manager doesn't breathe a word to these new state troopers that he owns the club, shows his intent to conceal. I do want to just make one factual correction about the discussion of Glenn Glover mentioning the investment in his interview with Jamila Wetz. Jamila Wetz testified, just to be clear, that after describing the puppy spa, after going over every question, she asked him directly, is there anything else? He said no. So whatever he may have said or not said about the investment, he, to Jamila Wetz's face, denied the involvement. You mentioned the puppy spa. Yes. Glover was not prosecuted for failing to disclose the puppy spa business in which he had an ownership stake. Is that right? That's right. So one thing is he actually did admit to and discuss that in his background interview with the investigator. The other is obviously there's not the same record of what his involvement was in it, and we target the prosecutions to the core conduct here. If you provide that information to the investigator but don't put it on your SF-86 form, then there's a discretionary call? I think that it would be a much more complicated trial. I think that the false statement is made both when the form is submitted and then a final point, if I may, Glover's counsel said that the statements were literally true, but there's a certification that each of them signed that their answers were not just correct but complete, and that was directly false. Thank you, counsel. We'll hear from each defendant in turn, two minutes reserved. Mr. Badia? Your Honor, I'll start with the conspiracy count. The government, of course, wants to start with motive because I think that's what they did at trial, and that was really where their strongest evidence was, that there was ample evidence of motive. But of course... Motive is not conspiracy. Of course. As Your Honor correctly noted, that's not enough. And here the government's evidence simply showed either parallel conduct or it showed two people acting the way they had done five years prior during the last security investigation. And the questions posed to them, to Mr. Polos, in the background investigation was about free time, and that question prompts questions, of course, about free time and not about working at a club or conduct at a club. So the government's evidence here really does cut both ways at the very most and does not establish beyond a reasonable doubt that there was a conspiracy. False statements charges, and this comes up in the context of motions to sever, which is, of course, a different standard. But false statements are sort of the classic case of individual conduct, sort of personal conduct. And so the government really does have an uphill battle here in showing two acts of personal conduct somehow created a conspiracy, particularly when it's the same thing that they'd done before. The evidence could cut either way. I have to admit it's close. Is that enough for proof of conspiracy? That's been troubling me. Your Honor, of course, we have to grant inferences based on the evidence in favor of the government. And take all evidence to the government's favor now after the verdict, but still. That's right, and I think the government, I think to put it in the affirmative, has not negated all reasonable hypotheses of innocence. And I think that's sort of the guiding light here, which is if they haven't negated reasonable hypotheses of innocence, then they haven't met their burden. And I think that's sort of what's lacking here. Going back to the fundamental ambiguity question, Judge Loyer correctly noted in light, this court in 1986 hinted that even if it was false under both interpretations, there could still be a fundamentally ambiguous question. And there the court noted that even though the defendant's answer might have been false under both, it was still fundamentally ambiguous. So the questions of is this self-employment or not, because the question itself is fundamentally ambiguous, the court doesn't have to decide whether the defendant's conduct falls within one of those examples because the question overall is fundamentally ambiguous. Thank you. Thank you. Your Honor, I'll quickly cover two points that the government made. First of all, it called the court's attention to motive, Mr. Glover's motive to hide or conceal. In fact, it was well known within the DEA, I think the record is clear, and the public records clearly wouldn't. If we were to agree with you on this conspiracy issue, what would that get you? Well, it eliminates the conspiracy conviction. Okay. It's number one. And you get a resentencing? And can you assess what impact the conspiracy conviction had on sentencing? I can't quantify it, Your Honor, in terms of what Judge Gordyce may or may not do. I wouldn't have the ability to do that. But to cover it quickly, it was well known. And the public records, if a thorough investigation was done, it clearly would have been disclosed. And in addition, Ms. Whitley did not recall most of her interview. That was her testimony at trial. I do want to end on two last points. First of all, the term employment is contained 16 times in this question. But there is no question. The sentence is list. It doesn't say what are all. So there is truly no question in that sense. Do you want a question mark? It would help, Your Honor. It makes it clearer. I mean, if the term you can be fundamentally ambiguous, so can this long, rambling description say do this, and by the way, with qualifiers. To be fundamentally, if in fact people can differ, and through these briefs and through these arguments, I think we all have differed. And we reasonably can differ as to what the meaning of the question is and what the question calls for. It is fundamentally ambiguous. And that's the case here. And I want to end with the short list of the things that could be an issue of employment, which I started to respond to Your Honor about before. You can go through insurance, workers' compensation, regular hours. Mr. Glover was free to get up and leave at any point in the evening. He had no obligation to be there. He was watching his investment not working. That's all I have unless the Court has further questions. Thank you, Counsel. Thank you all. Very nice argument.